[No. 24162. Department One. May 12, 1933.]

*In the Matter of the Estate of* SARAH K. WATERMAN, *Deceased.*

FIRST NATIONAL BANK OF SEATTLE, *as Administrator, Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.*[1]

*Bausman, Oldham, Cohen & Jarvis,* for appellant.

*G. W. H. Davis* and *W. F. Van Ruff,* for respondents.

MITCHELL, J.—This is an inheritance tax case. Sarah K. Waterman, a widow, died testate August 15, 1929, being at that time a resident of Seattle, King county, Washington, and leaving estate in that county subject to administration. Her will was duly admitted to probate, and, in the course of the administration of it, a controversy arose as to the amount of inheritance tax to be paid. This action was brought to determine

[1]Reported in 22 P. (2d) 53.

that controversy. The decision of the trial court was in an amount much larger than the administrator contended was correct; and, feeling aggrieved, the administrator has appealed. There is no statement of facts brought up on the appeal, the case being presented here in that respect upon findings of fact made and entered by the trial court.

The will, certain portions of which we italicize, after providing for minor specific bequests, debts, funeral expenses and costs of administration, provides:

"I give, devise and bequeath all of the rest and residue of my property of whatsoever nature and wheresoever situate, unto The Seattle National Bank Trust Department, of Seattle, Washington, in trust, however, upon the following terms:

"That my said Trustee shall have full authority to invest and reinvest any moneys belonging to my estate and to sell or otherwise dispose of any property belonging to my estate and to reinvest the proceeds therefrom and generally manage my estate as in the judgment of its trust officers acting in conjunction with my son Henry S. Waterman hereinafter mentioned as my executor shall seem best, provided however that before any moneys of my estate are invested or reinvested or any property belonging to my estate is sold or otherwise disposed of the trust officers and my son Henry S. Waterman *must be in full accord, and my said trustee shall pay the sum of Thirty ($30) Dollars per month to my sister, Clara Kalisher, of New York City, New York, during her lifetime, and the sum of Twenty-five ($25) Dollars per month to my sister, Emma Kalisher, of San Francisco, California, during her lifetime, and pay any income from my estate remaining after paying the monthly sums due my two said sisters and the expenses of the management of my estate to my son, Henry S. Waterman, and *upon the death of my two sisters, Clara Kalisher and Emma Kalisher above mentioned, the said trust shall be terminated if my son, Henry S. Waterman, be alive at that time, and all of the principal and income of my estate in the*

*hands of the said Trustee shall be distributed to my son, Henry S. Waterman.* In the event that upon the death of my two sisters, Clara Kalisher and Emma Kalisher, my son, Henry S. Waterman, shall not be alive but his widow shall be alive, then the said trust shall continue and all of the income of my estate shall be paid to the widow of my son, Henry S. Waterman, for the remainder of her lifetime and upon her death the said trust shall be terminated and all of my estate shall be distributed to any child or children of my son, Henry S. Waterman, and if there be no such child or children of my son, Henry S. Waterman, living at that time, then all of my said estate shall be distributed equally to my sisters, Caroline Stern of San Francisco, California, and Sophia Bruckman, of San Francisco, California, or their heirs.''

The trial court made, among others, findings as follows:

''(5) At the time of the death of the decedent the persons named in her will were of the following ages and relationships:

| | | |
|---|---|---|
| Henry S. Waterman | Son | Age 48 years |
| Elsie Waterman, wife of | | |
| Henry S. Waterman | Daughter-in-law | Age 48 years |
| Emma Kalisher | Sister | Age 63 years |
| Clara Kalisher | Sister | Age 64 years |
| Sophia Bruckman | Sister | Age 71 years |
| Caroline Stern | Sister (Deceased at the time of Sara K. Waterman's death) | |

''All the above, with the exception of Caroline Stern, as mentioned, were living at the time of the death of the decedent and are all now living. . . .

''(6) According to the state mortality tables, the beneficiaries named in the will of the decedent had at the time of her death life expectancies as follows:

| | | |
|---|---|---|
| Clara Kalisher | Life Expectancy | 11½ years |
| Emma Kalisher | Life Expectancy | 12.05 years |
| Sophia Bruckman | Life Expectancy | 8.10 years |
| Henry S. Waterman | Life Expectancy | 21.56 years |
| Elsie Waterman | Life Expectancy | 21.56 years |

"According to mortality tables, at the time of the death of the decedent it was, and is now, probable that Henry S. Waterman would outlive both Emma Kalisher and Sophia Bruckman."

By inadvertence, manifestly, Clara Kalisher was omitted from the list of those the court found Henry S. Waterman would probable outlive.

To make the matter clear, pertinent portions of certain statutes which bear upon the situation should be before us. Rem. Comp. Stat., § 11206 (Laws of 1917, p. 595, § 4) reads as follows:

"When property is transferred in trust or otherwise and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, such property shall be appraised at its clear market value immediately upon the transfer or as soon thereafter as practicable and a tax shall be imposed upon such transfer *at the lowest rate which on the happening of any of said contingencies or conditions would be possible under the provisions of this act* and such tax so imposed shall be due and payable in the same manner as other taxes under this chapter. . . ." (Italics ours.)

This statute was amended by the Laws of 1929, page 529, § 2, to read as follows:

"When property is transferred in trust or otherwise and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, such property shall be appraised at its clear market value immediately upon the transfer or as soon thereafter as practicable and a tax shall be imposed upon such transfer *at the highest rate which on the happening of any of said contingencies or conditions would be probable under the provisions of this act* and such tax so imposed shall be due and payable in the same manner as other taxes. . . ." (Italics ours.) Rem. Rev. Stat., § 11206.

As we understand, the respondent contends, in effect, that the amendment of the statute, so far as the present case is concerned, makes no change in the rule fixing the amount of inheritance tax to be imposed. That view was adopted by the trial court. Upon this point, respondent says in its brief:

"Counsel seems to lose sight of the intention of the legislature to require the payment of an inheritance tax in the largest amount which on the happening of any contingency would be payable."

In support of such theory, respondent cites cases from other states, and relies with considerable satisfaction upon the case of *In re Parker's Estate,* 226 N. Y. 260, 123 N. E. 366. Discussing such authorities in a situation similar to the present one, we said, in the case of *In re Eaton's Estate,* 170 Wash. 280, 16 P. (2d) 433:

"We refrain from discussing the authorities cited, as no other state has a statute like ours. The statutes of New York and three other states provide for taxation of the trust estate at the *highest* rate *possible,*"

an entirely different provision from that found in the amendatory act of this state, which provides that the tax shall be imposed upon the transfer with reference to the happening of any of said contingencies or conditions which would be *probable* under the provisions of the act.

After the present case was decided by the trial court, the case of *In re Eaton's Estate,* 170 Wash. 280, 16 P. (2d) 433, was decided. The decision in the *Eaton* case was contrary to the judgment in the present case. That was the case of a will by which the testatrix gave her property to her two adopted children, sixteen and fifteen years of age, respectively, the will further providing:

". . . but in the event of the death of either of my said adopted children before he or she shall have reached their majority, unmarried and without issue, then the survivor shall take the other's share; and in the event that both of my said adopted children shall die before arriving at majority, unmarried and without issue, then my said sister, Julia Resor Foster, or her heirs, shall be the residuary legatees of this my last will and testament. In the event of the death of both my said adopted children before they shall have reached their majority, but leaving issue, then such issue shall take as residuary legatee or legatees, per capita. And in the event my said son shall die before his majority, and leave no issue, but a wife surviving him, then I give, bequeath and devise to said surviving wife, not to exceed one-fourth of my net estate after payment of special bequests; provided, that if one-fourth thereof shall exceed thirty thousand ($30,000) dollars, that sum shall be the total of this gift."

The former statute of 1917 and the amendment of it in 1929 were discussed, and special notice taken of the word "probable," used in the amendatory act, as compared with the word "possible," found in the act of 1917, and, in speaking specially of the word "probable," it was said: "The language of the statute is plain. It admits of but one meaning. That being so, interpretation is unnecessary." The conclusion in that case was as follows:

"While it is possible that the two children may not reach their majority, it is likewise possible that some of the other contingencies may never happen. We judicially know that it is more probable or more likely that the two children will arrive at their majority rather than predecease the decedent's sister or the heirs of the latter. We can hardly hold, as a matter of law, that the probability is that the two children of the ages of fifteen and sixteen years will not survive their mother's sister. We agree with the trial court

that the probabilities are all in favor of the estate vesting in the lineal heirs, and that the tax should be computed upon that basis under the provision of the statute."

The rule of that case is applicable and controlling here. We cannot hold, as a matter of law, that the probability is that Henry S. Waterman, the son, will not survive his aunts, Clara Kalisher and Emma Kalisher. We agree in this respect with the findings of the trial court, that the probabilities favor the survival of the son beyond the lives of the surviving sisters of the testatrix. That result would effect the vesting of the estate in the son.

It was upon this basis and consideration of the statute and the will that the inheritance tax was reckoned and paid into court by the administrator.

Reversed, and remanded with directions to enter judgment for the estate.

BEALS, C. J., HOLCOMB, and MILLARD, JJ., concur.